**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN R. SEDLMAYR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-CV-1826 RLW |
| | ) |
| UNITED STATES OF AMERICA,, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross motions for summary judgment.   The

motions are fully briefed and ready for disposition.   For the following reasons, the Court grants

Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

### *I.     Procedural Background*

On October 26, 2018, Plaintiff filed this action against the United States of America (the

"United States" or "Government") seeking a tax refund for certain installment payments he made

between January 16, 2013, and October 15, 2016.   Plaintiff alleges in his Complaint that he filed

his 1996 federal individual income tax return, Form 1040, on or about January 21, 1998, and on

February 23, 1998, the Internal Revenue Service ("IRS") assessed his individual income tax

liability for the tax year 1996 to be $41,039.00.   (ECF No. 1 at 2).   Plaintiff alleges that sometime

after July 26, 2006, he made monthly installment payments to the IRS in the amount of $2000.00,

which the IRS applied to his 1995, 1996, 1997, and 1999 tax liabilities.   (Id. at 4.)   According to

Plaintiff's Complaint, the statute of limitations for the collection of his 1996 federal individual

income tax liability expired on February 18, 2011.   (Id. at 4.)   Plaintiff claims he never signed a

written agreement to extend the statute of limitations for collection of his 1996 federal individual

income tax liabilities, and yet he continued to receive payment notices after that date.   Plaintiff

alleges he made 46 payments of $2000.00 after the statute of limitations expired and that he is entitled to a refund in the amount of these payments, together with interest and attorney's fees.

On August 27, 2019, the parties filed a Joint Stipulation for Partial Dismissal of Complaint. (ECF No. 12). The parties agreed to dismiss with prejudice any portion of Plaintiff's Complaint that seeks a tax refund for any payments Plaintiff paid toward his 1996 federal income tax liability before August 12, 2014, because he made those payments more than two years before he filed his administrative tax refund claim on August 12, 2016. See U.S.C. § 6511(b)(2)(B).

Following discovery in the case, the parties filed cross motions for summary judgment. In its Motion for Summary Judgment, the United States argues the undisputed evidence establishes the parties entered into an installment agreement and on or about April 22, 1998, Plaintiff signed a waiver extending the statute of limitations for the collection of his 1996 tax liability until at least December 30, 2016. Therefore, according to the United States, none of the payments at issue in this case were collected after the statute of limitation had expired. The Government maintains Plaintiff is not entitled to a refund, and judgment should be entered in its favor a matter of law.

Plaintiff opposes Defendant's Motion for Summary Judgment and moves for summary judgment on his own behalf. Plaintiff argues the United States cannot produce a copy of the April 22, 1998, written waiver extending the statute of limitations that he supposedly signed. Plaintiff also argues the computer records upon which the Government relies in support of its motion are internally inconsistent. Plaintiff asserts the undisputed evidence shows that he did not sign a written waiver extending the collection deadline for his 1996 income tax liability and, therefore, he is entitled to a refund in the amount of $54,000.00, plus interest, which represents the twenty-seven $2,000.00 payments he made two years prior to his filing his administrative claim for refund.

2

## II.   *Summary Judgment Standard*

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).   The substantive law determines which facts are critical and which are irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   Only disputes over facts that might affect the outcome will properly preclude summary judgment.   Id.   Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323.   Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."   Anderson, 477 U.S. at 248.   "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture."   Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)).   "Small factual disputes about the underlying events . . . could only create the 'metaphysical' kind of doubt that the Supreme Court decried in Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)."   Main v. Ozark Health, Inc., 959 F.3d 319, 327 (8th Cir. 2020) (cleaned up; quoted case omitted).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the parties' cross Motions for Summary Judgment.

### *III. Facts*

It is undisputed that during the years at issue in this case, Plaintiff was a self-employed insurance agent who received commissions for his sales of insurance policies. Because he was self-employed, federal income taxes were never withheld from the payments Plaintiff received for his commissions. From 1995 through 1999, Plaintiff did not make regular estimated federal tax payments to the IRS to pay his income tax liabilities. He submitted federal income tax returns, which he filed with the IRS, but he did not pay the amounts of tax that he reported on the returns when he filed them.

Plaintiff filed his federal income tax return for tax year 1996 in early 1998.[1]  On his 1996 tax return, Plaintiff reported his 1996 federal income tax liability to be $41,039.00, plus a $2,184.00 penalty. Plaintiff did not make a payment for his 1996 liability when he filed his 1996 return. On February 23, 1998, a delegate of the Secretary of the Treasury assessed Plaintiff's unpaid federal income tax liability for 1996 based on his self-filed return, in the amount of $41,039.00. In early 1998, Plaintiff had outstanding income tax assessments for both tax years 1995 and 1996.

---

[1]Plaintiff alleges in his Complaint that he filed his 1996 income tax return on or about January 21, 1998.  (ECF No. 1 at 1, ¶ 6).  As discussed in more detail below, in one of the many computer records produced by the IRS, it is noted that Plaintiff filed his 1996 income tax return on April 15, 1998.  The Government asserts this was an error and points to other computer records where it is noted that Plaintiff filed his 1996 income tax return in January 1998.  The Court finds the inconsistency in the one record does not create an issue of material fact that would preclude the entry of summary judgment in this case.  First, Plaintiff admitted he filed his 1996 income tax return in January 1998.  Second, the date the 1996 return was filed is not material to this dispute. Plaintiff is not challenging the validity of the IRS' assessment of his 1996 income taxes, but rather is seeking a refund of the taxes he paid after the deadline for the collection of those taxes had expired.

4

The IRS maintains a computer database with taxpayer account information known as the integrated data retrieval system ("IDRS"). IRS employees routinely rely on IDRS to retrieve and review information regarding the reporting and assessment of taxpayers' liabilities, and to view the collection activities that have taken place with respect to such liabilities. IRS transcripts include tax module transcripts ("TXMODA" or "TXMODB"), Individual Master File Online Transcripts ("IMFOLTs"), and plain-language or plain-English transcripts. Some IRS transcripts display more information than others. IRS TXMODA or TXMODB transcripts include assessment of the tax on the income tax return, collection information, payments, installment agreements, offers in compromise, the statute of limitations for collection, IRS campus history (IRS service center), notice histories, and command codes, such as a definer. IRS TXMODA or TXMODB transcripts display more information about a taxpayer's tax liabilities than the IMFOLT transcript. The IMFOLT transcript lists the IRS IDRS command codes with respect to a taxpayer's account, including assessment of the tax on the income tax return, collection information, payments, installment agreements, offers in compromise, and the statute of limitations for collection. A plain-language or plain-English transcript of a taxpayer's account provides a list of the IDRS codes in plain language. Plain-language transcripts do not contain all account information.

Plaintiff's IRS TXMODA transcript for tax year 1996 indicates that on April 22, 1998, Plaintiff signed an IRS Form 900, Tax Collection Waiver, and pursuant to this waiver, Plaintiff agreed to extend the statutory period of limitations to collect his 1996 federal income tax liability until December 30, 2016.[2] The IRS TXMODA transcripts also reflect that on or near April 22,

---

[2]Plaintiff denies he signed the waiver agreement. The only evidence Plaintiff offers in support of his denial, however, is his own conclusory interrogatory answers, which are

1998, Plaintiff entered into an installment agreement with the IRS to pay his unpaid income tax liabilities for 1995 and 1996 by making monthly payments of $686.00. According to IRS TXMODA records, on May 1, 1998, the IRS changed the collection status code for Plaintiff's 1996 federal income tax liability to "Installment Status."

In support of its Motion for Summary Judgment, the Government did not provide copies of the original IRS Form 900, Tax Collection Waiver, or IRS Form 433-D, the installment agreement signed by Plaintiff on or around April 22, 1998. The Government claims copies of these agreements, which are more than 20 years old, cannot be located. Instead, the Government relies on the IDRS computer records to establish the existence of these agreements.

At his deposition, Plaintiff had difficulties remembering events during the time period at issue in this case. Plaintiff testified he did not remember having any conversations with someone at the IRS in February, March, or April 1998, about his 1996 tax liability. (ECF No. 16, Ex. at 93-4, 98). Plaintiff testified, "I don't remember doing anything in April of 1998," and "I couldn't begin to tell you anything about [April 1998]." (Id. at 98, 106). Plaintiff testified that he did not know whether he was in an installment agreement for his 1996 tax liability. (Id. at 113). Plaintiff testified he does not remember signing either an installment agreement or a waiver agreement.[3] (Id. at 116-17). Plaintiff testified he did not remember signing any agreement with the IRS in April 1998. (Id. at 228).

_____

contradicted by his deposition testimony and are not enough to create an issue of fact. See discussion supra.

[3]Plaintiff's deposition testimony is not consistent with his interrogatory answers. In his written responses to interrogatories, Plaintiff answered unequivocally that he did not sign IRS Form 900, Collection Statute Waiver, or a similar agreement for 1996 or any tax year. (ECF No. 20, Ex. 12 at 4-5).

In May 1998, Plaintiff began making $686.00 payments to the IRS on a monthly basis. Plaintiff made monthly payments of $686.00 between May 20, 1998 and April 5, 2000. Plaintiff testified that he does not remember making these payments or why he made them.

On July 12, 1999, the IRS issued Plaintiff a notice of its intent to levy his 1996 federal income tax liability. The notice states Plaintiff had defaulted on his installment agreement. Plaintiff was assessed a fee in the amount of $24.00, and he resumed making the $686.00 payments until April 2000.

Between 2000 and 2005, Plaintiff submitted multiple offers-in-compromise to the IRS to resolve his outstanding income tax liabilities for tax years 1995, 1996, 1997, 1998, and 1999. The IRS did not accept Plaintiff's offers. By mid-2006, Plaintiff's combined federal income tax liability for tax years 1995, 1996, 1997, and 1999 totaled $240,913.87, which included $105,986.35 of unpaid taxes, interest, and penalties attributable to his 1996 income tax liability.

On July 26, 2006, Plaintiff entered into a second installment agreement with the IRS, this one regarding his unpaid federal income tax liabilities for tax years 1995, 1996, 1997, and 1999 (the "2006 Installment Agreement"). The 2006 Installment Agreement provided that Plaintiff would pay the amount he owed for tax years 1995, 1996, 1997, and 1999 through monthly installment payments of $2000.00. When Plaintiff entered into the 2006 Installment Agreement, no one told him that he would not have to fully pay his liabilities for the tax years included in the agreement. Plaintiff understood that the 2006 Installment Agreement provided that he would pay his 1995-97 and 1999 federal income tax liabilities, including all interest and penalties, although he was hoping not to pay the full amount.

After July 26, 2006, Plaintiff made $2000.00 monthly payments to the IRS. From August 13, 2014, through October 15, 2016, Plaintiff made 27 monthly payments of $2000.00 to the IRS

under the 2006 Installment Agreement for Plaintiff's 1996 income tax liability.   In August 2017, the IRS refunded to Plaintiff $2000.00 plus interest.

## *IV.  Discussion*

This suit is a taxpayer suit for a refund of alleged overpayments of federal taxes.   The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(a)(1).   A taxpayer may bring "a civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."   Id.

While a taxpayer who claims to have overpaid his or her federal taxes may sue the federal government for refund of the overpayment, prior to filing suit for the recovery of overpayment of taxes, a taxpayer must file an administrative refund claim with the IRS.   26 U.S.C. § 7422(a). The administrative refund claim must be filed within three years after the taxpayer's return was filed. or within two years after the tax was paid.   26 U.S.C. § 6511(a).   Here, Plaintiff filed an administrative refund claim with the IRS, but he waited until August 12, 2016, to file the claim. Consequently, as stipulated by the parties, Plaintiff's claim for refund of the overpayment of taxes is limited to the two years prior to this date, i.e., from August 12, 2014 forward.   See 26 U.S.C. § 6511(b)(2)(B).

In a suit for refund of overpayment of taxes, the plaintiff bears the burden of proof to establish by a preponderance of the evidence that he or she overpaid the tax in question and is entitled to a refund.   Dargie v. United States, 742 F.3d 243, 245 (6th Cir. 2014); Iowa 80 Grp.. Inc. v. I.R.S., 406 F.3d 950, 952 (8th Cir. 2005).   In this case, Plaintiff does not claim that the amount the IRS assessed was in error.   Plaintiff's theory of the case is that he paid some of his

8

1996 taxes after the statute of limitations had run for their collection.   In other words, he argues the IRS did not have a right to collect his 1996 taxes after the statute of limitations expired and, therefore, the amount he paid after the statute's expiration was an overpayment and he is entitled to a refund.

It is undisputed that the IRS assessed Plaintiff's 1996 income tax on February 23, 1998, and the statute of limitations for the collection of the assessment began to run on that date.   At the time, the statute of limitation for the collection of taxes read:

> (a)   Length of period – Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—
>
> > (1) within 10 years after the assessment of the tax, or
> >
> > (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 10-year period . . . .
>
> The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.   If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

26 U.S.C. § 6502(a) (1998).

Under the statute, the IRS had 10 years from the date of the assessment, minus time when the statute of limitations was suspended by statute, to collect the tax.[4]   26 U.S.C. § 6502(a)(2).

---

[4] A number of events suspend the statute of limitations for the collection of taxes.   For example, the deadline is suspended when the IRS is prohibited from issuing an administrative levy. 28 U.S.C. § 6331(i)(5).   In 1998, the IRS was prohibited from making a levy while an offer in compromise is pending approval until it is denied, plus 30 days, or until it is approved.   28 U.S.C. § 6331(k) (1998).   The IRS was also prohibited from making a levy during the period when an installment agreement was pending approval.   Id.   Section 6331(k) has been amended a number of times since 1998.   The Community Renewal Tax Relief Act of 2000, effective December 21,

The ten-year limitations period can be extended if the IRS can secure a written waiver from a taxpayer.  Id.

Plaintiff argues in his Motion for Summary Judgment that the statute of limitations for the collection of his 1996 federal income tax liabilities expired on December 7, 2010, which was ten years after the assessment date plus 1018 days when the statute of limitations was suspended pursuant to 26 U.S.C. §§ 6331(i)(5) and (k).[5]  The exact calculation of when the statute of limitations expired is immaterial to this dispute, however, because the parties agree the statute expired more than two years before Plaintiff filed his administrative refund claim–that is, it expired sometime prior to August 12, 2014.   The issue before the Court is whether there is undisputed, admissible evidence that Plaintiff and the IRS agreed, in writing, to extend the collection period for Plaintiff's 1996 income tax liabilities.   26 U.S.C. § 6502(a)(2).

The Government contends that Plaintiff executed a Form 900 waiver on April 22, 1998, extending the statute of limitation for collection of his 1996 taxes until December 30, 2016.   The Government did not produce a copy of the waiver Plaintiff signed, and instead relies on entries in the IDRS as well as deposition testimony from IRS employees who are familiar with the IDRS, Plaintiff's file, and IRS policies and procedures.

---

2000, amended § 6331(k)(3) and eliminated the suspension of the IRS collection statute's expiration date while offers and installment agreements were pending.   The Job Creation and Workers Assistance Act of 2002, effective March 9, 2002, amended § 6331(k)(3) and reinstated the same collection statute expiration suspensions with respect to both offers in compromise and installment agreements while an IRS levy is prohibited.   That said, the Court need not determine which amendments are applicable here, because the issue is not determinative to the outcome of the case.   It is undisputed the statute of limitations for the collection of Plaintiff's 1996 income taxes expired more than two years before he filed an administrative refund claim.

[5]In his Complaint, Plaintiff calculated that the statute of limitations ran on February 18, 2011—ten years after the assessment, plus 1091 days when the statute of limitations was suspended.

Plaintiff denies he executed a waiver extending the collection of his 1996 tax liability to December 30, 2016. As evidence of his denial, Plaintiff points to his answers to written interrogatories. "I did not sign IRS Form 900, Collection Statute Waiver, or similar agreement for 1996" (ECF No. 20, Ex. 12 at 5). "I have not signed IRS Form 900, Collection Statute Waiver, for any taxable year." (Id.) These denials, which are conclusory and self-serving, are insufficient to support or oppose a motion for summary judgment because it is apparent from the record they are not based on Plaintiff's personal recollection or knowledge of the events at the time. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated") (emphasis added).

A party may cite his or her interrogatory answers to support or oppose a motion for summary judgment, but those answers are subject to the evidentiary standards under Rule 56(c)(4), including the requirement that any statements be made on personal knowledge. Banks v. Deere, 829 F.3d 661, 668 (8th Cir. 2016) (finding interrogatory answers insufficient to oppose summary judgment motion because they were not based on personal knowledge); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983) (discounting affidavit because it was not based on personal knowledge); see also Estate of Gustafson ex rel. Reginella v. Target Corp., 819 F.3d 673, 677 n.4 (2d Cir. 2016); Johnson v. Holder, 700 F.3d 979, 982 (7th Cir. 2012); Gross v. Burggraf Const. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990).

If the record establishes that a declarant has no present recollection about the time or events in question, a court may conclude that he or she does not have the personal knowledge required to make an admissible statement, whether offered at trial or summary judgment. See Unterreiner v.

Volkswagen of Am., Inc., 8 F.3d 1206, 1211-12 (7th Cir. 1993), overruled on other grounds by Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013); see also United States v. Tapaha, 891 F.3d 900, 906 (10th Cir. 2018) (same); State Farm Mut. Auto. Ins. Co. v. Christian, No. 11-CV-03781-LSC, 2013 WL 5350672, at *4 (N.D. Ala. Sept. 23, 2013) (same); Snoznik v. Jeld-Wen, Inc., No. CIV.1:09CV42, 2010 WL 1924483, at *16 (W.D.N.C. May 12, 2010) ("'If . . . the witness' memory is so impaired that [he] cannot testify coherently without filling the gaps in [his] memory with hearsay or speculation, the witness lacks personal knowledge.'") (quoting 27 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 6023 (2d ed.)).

At Plaintiff's deposition, which was taken after he provided answers to the United States' interrogatories, he testified he does not remember signing either an installment agreement or a waiver agreement in 1998. (ECF No. 16, Ex. at 116-17). Plaintiff testified he did not remember signing any agreement with IRS in April 1998. (Id. at 228). In fact, Plaintiff's memory as to the events in the spring of 1998 is very limited: He testified, "I don't remember doing anything in April of 1998," and "I couldn't begin to tell you anything about [April 1998]." (Id. at 98, 106). Plaintiff's deposition testimony is inconsistent with his interrogatory answers, and his denial in the latter that he signed a Form 900 waiver is not supported by admissible evidence in the record. Plaintiff's deposition testimony that he fails to recall executing a Form 900 waiver is not the same as a denial supported by admissible evidence in the record. See Bosley v. Cargill Meat Sols. Corp., 705 F.3d 777, 782 (8th Cir. 2013). "An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur." To v. U.S. Bancorp, 651 F.3d 888, 892 (8th Cir. 2011) (citing Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1057 (8th Cir. 2007)).

Plaintiff is not entitled to judgment as a matter of law because he fails to rebut with admissible evidence the Government's evidence that he executed a waiver extending the collection of his 1996 income tax liabilities.    Plaintiff's motion for summary judgment is denied.

Where parties file cross-motions for summary judgment, as here, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law.    See, e.g., Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983).    The Court now turns to the Government's Motion for Summary Judgment and must determine if it has established the absence of genuine issues of material fact such that the Government is entitled to judgment as a matter of law.

As discussed above, the Government did not submit a copy of a Form 900 waiver executed by Plaintiff, but rather it relies on entries in the IDRS, as well as deposition testimony from IRS employees who are familiar with the IDRS, Plaintiff's file, and IRS policies and procedures.    In support of its Motion for Summary Judgment, the Government submitted the Declaration of Jennifer L. McCormick signed under penalty of perjury pursuant to 28 U.S.C. § 1746.    Ms. McCormick, a Revenue Advisor Officer with the IRS, declared that she is familiar with the recordkeeping practices and procedures of the IRS regarding the collection of outstanding income tax liabilities, and is familiar with IDRS, including TXMODA transcripts and the transaction codes and status codes used therein, and how they are displayed in the system.    According to Ms. McCormick, she reviewed Plaintiff's IDRS file, and "[t]he TXMODA transcript for tax year 1996 reflects that on April 22, 1998, [Plaintiff] signed an IRS Form 900, the Tax Collection Waiver ('1998 Collection Waiver'), regarding his 1996 federal income tax liability.   The TXMODA transcript shows that pursuant to the 1998 Collection Waiver, [Plaintiff] agreed to extend the

statutory period of limitations for the collection of his 1996 liability until December 30, 2016."
(ECF No. 16, Ex. 1 at 6).   Ms. McCormick also attests that "on or near the date that [Plaintiff]
signed the 1998 Collection Waiver, he entered in an installment agreement to pay his unpaid tax
liabilities for [1995 and 1996]."   (Id.)

The Government also submitted the Declaration of Apuleius Hillier, IRS Senior Tax
Analyst, signed under penalty of perjury pursuant to 28 U.S.C. § 1746.   Mr. Hillier declares that
he is familiar with the IRS's recordkeeping policies and procedures regarding the assessment and
collection of outstanding federal tax liabilities.   Mr. Hillier further declares that he routinely
provides support to IRS operations regarding the correct computation of the collection statute
expiration date ("CSED") for unpaid tax liabilities.   Mr. Hillier states he is familiar with and has
direct access to the IDRS, and he is knowledgeable about the meaning of the numeric transaction
codes used to record events and transactions regarding a taxpayer's liability, as well as definer
codes and action codes.   According to Mr. Hillier:

> The IRS TXMODA and the IMFOLT for [Plaintiff]'s 1996 income tax liability
> show that a TC 550, with a definer code of 01, was entered for April 22, 1998.   A
> TC 550 with a definer code of 01 means that IRS has secured an IRS Form 900
> (Tax Collection Waiver) from the taxpayer extending the statutory collection period
> to a certain date.   In this case the TC 550 entered for April 22, 1998, reflects that
> on that date [Plaintiff] executed a Form 900 agreeing to extend the CSED (*i.e.*, the
> statutory collection period) for his 1996 liability to December 30, 2016.
> . . . .
> In addition to the IRS TXMODA and IMFOLT, the plain-language transcripts
> generated for [Plaintiff]'s 1996 liability in September 30, 2008 [ ], September 24,
> 2009 [ ], and June 7, 2016 [ ], all reflect that the TC 550 entered for the 1996 liability
> on April 22, 1998 (recording the Form 900 that [Plaintiff] signed on that date).
>
> On September 15, 2016 (*i.e.*, approximately 18 years after the IRS obtained
> [Plaintiff]'s Form 900), the IRS TXMODA and IMFOLT reflect that an IRS
> employee entered a *second* TC 550 for [Plaintiff]'s 1996 liability.   This TC 550
> manually adjusted (and *shortened* the CSED for [Plaintiff]'s liability to September
> 30, 2016.

(ECF No. 27, Ex. 1 at 3-4, ¶¶ 10, 12, 13).

14

The IDRS transcripts and the Declaration testimony from the IRS officers are evidence Plaintiff signed a Form 900 waiver extending the collection deadline for his 1996 tax liability to December 30, 2016.   According to the Government, the Form 900 that Plaintiff executed in April 1998 has since been lost, and there is no evidence in the record that the unavailability of the record is anything but inadvertent.   Although the Government has been unable to locate a copy of the waiver, the IDRS transcripts are government business records that are admissible under the public records exception to the hearsay rule, Fed. R. Evid. 803(8), and the Court may rely on these records for purposes of summary judgment.   O'Dell v. Hercules, Inc., 904 F.2d 1194, 1204 (8th Cir. 1990).   Absent "clear evidence to the contrary," the Court may presume that the government employees who recorded the information shown on them discharged their official duties and complied with "all necessary prerequisites to the validity of official action."   United States v. Ahrens, 530 F.2d 781, 785–786 (8th Cir. 1976) (quoting Lewis v. United States, 279 U.S. 63, 73 (1929)); see also United States v. Hanks, No. 3:09-CV-101-J-20MCR, 2012 WL 11047281, at *15 (M.D. Fla. Mar. 22, 2012), aff'd, 569 F. App'x 785 (11th Cir. 2014) (same).

Plaintiff neither disputes the admissibility of the IDRS transcripts, nor has he presented any evidence that the IRS failed to comply with proper legal or administrative procedures when it recorded the IRS Form 900 on or near April 22, 1998.   Instead, Plaintiff disputes the Government's evidence by arguing the IRS transcripts contain several errors, mistakes, omissions, and have internally inconsistent entries, which are material to this dispute.   Plaintiff points to seven mistakes in the IRS transcripts and argues that based on these errors the Court "should not rely on the IRS transcripts."   (ECF No. 28 at 2).   The Court will address each of these claimed errors in turn.

First, Plaintiff points to the fact that the 1996 plain-language transcript dated June 7, 2016,

records that Plaintiff filed his 1996 Form 1040 on January 21, 1998, while the 1996 plain-language

transcript dated September 30, 2008, records that Plaintiff filed his 1996 Form 1040 on April 15,

1998. The Government admits that the September 30, 2008 plain-language transaction shows an

incorrect filing date for Plaintiff's 1996 tax return, but it argues the error does not preclude

summary judgment because the date Plaintiff filed his 1996 tax return is immaterial and not at

issue in this dispute. The Court agrees.

Plaintiff alleges in his Complaint that he filed his 1996 income tax return on or about

January 21, 1998. (ECF No. 1 at 1). And Plaintiff asserts that (1) he filed a federal income tax

return for 1996; and (2) on February 23, 1998, the IRS assessed his 1996 income tax liability based

on the amount of tax he reported. By Plaintiff's own facts, Plaintiff could not have filed his 1996

return on April 15, 1998.[6] Furthermore, other IDRS transcripts, such as Plaintiff's TXMODA,

show the filing date for Plaintiff's 1996 tax return to be January 21, 1998. The Court finds the

filing date for Plaintiff's 1996 tax return shown in the September 30, 2008 plain-language

transcript is an error, but this does not raise an issue of material dispute that precludes the entry of

---

[6] Plaintiff attempts to create a new legal and factual issue based on the error in the September 30, 2008 plain language transcript. Even though Plaintiff admitted he filed his 1996 tax return in January 1998, and his taxes were assessed thereafter, Plaintiff now argues this evidence shows the IRS assessed his 1996 taxes before he filed his 1996 returns. Plaintiff asserts, "The fact that the IRS transcript records that the tax was assessed prior to the tax return filing is huge. There can be no basis for an assessment, based on the tax return, if the assessment date is prior to the return filing date. In that case, it would be a premature assessment and therefore a void assessment. If the assessment is void, there can be no basis for statutory tax lien under 26 U.S.C.§ 6321, and no basis to extend the statute of limitations, as the United States argues." (ECF No. 28 at 4). Plaintiff raises this issue for the first time in his reply memorandum in support of his motion for summary judgment. (Id.) Plaintiff did not assert in his Complaint or argue in his motion for summary judgment that the IRS's assessment of his 1996 tax liability was void. The Court rejects this argument and finds the April 15, 1998 tax return filing date in the September 30, 2008 plain-language transcript is merely an error that is immaterial to this dispute.

summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of material fact." <u>Anderson</u>, 477 U.S. at 247–248 (emphasis added).

As for the second error in the IDRS transcripts, Plaintiff points to the fact that the 1996 plain-language transcripts dated September 30, 2008, and June 7, 2016, record a collection statute of limitations extension to December 30, 2016 (transaction code 550, date entry April 22, 1998), while the 1996 plain-English transcript dated November 27, 2018, does not contain a transaction code 550 on April 22, 1998.   The Government disputes this is an error.

According to the Government, the November 27, 2018 plain-language transcript simply displays different information than the earlier transcripts, because the IRS took subsequent action. According Mr. Hillier's Declaration, which is not disputed, the TC 550 entered on April 22, 1998, for Plaintiff's 1996 liability has a definer code of 01, which means the IRS secured a Form 900 from Plaintiff, in which he voluntarily agreed to extend the collection period to December 30, 2016.   With the exception of the November 27, 2018 plain-language transcript, each of the IRS transcripts for Plaintiff reflects a TC 550 entered for Plaintiff's 1996 liability on April 22, 1998. The Government explains that the November 27, 2018 plain-language transcript does not display the TC 550 entered on April 22, 1998, because it displays a second TC 550 entered on September 15, 2016.   According to the Government, the TC 550 entered on September 15, 2016, shortened the collection deadline for Plaintiff's 1996 tax liability from December 30, 2016, to September 30, 2016.   Mr. Hillier explained in his Declaration that upon receiving Plaintiff's refund claim, the IRS intentionally entered a second TC 550 to shorten the collection deadline and then notified Plaintiff that due to a change in IRS policy, it would no longer enforce, as of that date, the Form 900 Plaintiff signed in April 1998.   The TC 550 entered on September 15, 2016, overrode the

original TC 550 entered April 22, 1998, and therefore the November 27, 2018 plain-language transcript no longer reflects the original transaction code.   However, the TC 550 recorded on April 22, 1998, continues to be shown on Plaintiff's 1996 TXMODA and the IMFOLT.

As both Mr. Hillier and Ms. McCormick have declared, plain-language transcripts do not display all transactions or information stored in IDRS regarding a taxpayer's liability, and TXMODA and the IMFOLT transcripts are more complete records.   According to Mr. Hillier:

> Plain-language transcripts do not display as much information about a taxpayer's account as either an IRS TXMODA or an IMFOLT, and, in some instances, they may not show sufficient information to correctly determine the [collection statute expiration date] for a particular [tax] liability.   Generally, the IRS TXMODA is the IDRS transcript that sets forth the *most* complete set of data regarding a taxpayer's liability and the vents that have occurred with respect to the assessment or collection of that liability.

(ECF No. 27, Ex. 1 at 3, ¶ 9).   Plaintiff does not dispute these facts or the Government's explanation made in response to Plaintiff's assertion that there was an error in the 1996 plain English transcript dated November 27, 2018.   The Court finds that the second error claimed by Plaintiff is in fact not an error, for the reasons explained by the Government.

As for the third error, Plaintiff points to the fact that the 1996 plain-language transcript dated September 30, 2008, records a collection statute of limitations extension to December 30, 2016 (transaction code 550, date entry April 22, 1998), while the 1996 plain-English transcript dated November 27, 2018, records a collection statute of limitations extension to September 30, 2016 (transaction code 550, date entry September 15, 2016).   The Government does not dispute that the November 27, 2018 plain-language transcript does not show the TC 550 entered for April 22, 1998, but asserts that the absence of the transaction code in the November 27, 2018 plain-language transcript was not an error and, as discussed above, is explained by the fact that a second TC 550 was entered on September 15, 2016.   Again, Plaintiff does not dispute these facts, or the

explanation offered by the Government.   The Court finds that the third error claimed by Plaintiff is not an error, for the reasons explained by the Government.

As for the fourth and fifth transcript errors, plaintiff points to the fact that the 1995 plain-language transcript dated June 7, 2016, does not include a transaction code 550 dated April 22, 1998, extending the statute of limitations for collection to December 30, 2016, and instead contains a transaction code 550 dated December 10, 2002, extending the statute of limitations for collection to October 3, 2007.   The Government states that the statutory collection period for Plaintiff's 1995 tax liability is not at issue in this case but, to the extent it is relevant, asserts the plain-language transcript for Plaintiff's 1995 tax liability does not reflect any errors or inconsistencies.   The Government notes that the plain-language transcript dated June 7, 2016, does not display the TC 550 entered April 22, 1998 (recording the Form 900 that Plaintiff signed for his 1995 and 1996 tax liability), but does display a second TC 550 entered for tax year 1995 on December 10, 2002.   As Mr. Hillier explained: "Any TC 550 entered for a taxpayer's outstanding liability will override the systemically computer CSED and any previously-entered TC's 550 that had been entered to manually adjust the CSED."   (ECF No. 27, Ex. 1 at 2, ¶7).   Therefore, according to the Government, the second TC 550 entered in the plain-language transcript for Plaintiff's 1995 tax liability overrode the original TC 550 entered on April 22, 1998.   Plaintiff's 1995 TXMODA and IMFOLT for 1995 continue to reflect the original TC 550, with definer code 01, entered on April 22, 1998.   According to Mr. Hillier's undisputed Declaration, IRS TXMODAs and IMFOLTs provide more complete information regarding a taxpayer's unpaid liability than plain-language transcripts, and the fact that the original TC 550 no longer appears on a plain-language transcript does not mean that the original transaction did not occur.   Plaintiff does not dispute these facts or

the Government's explanation.   The Court finds that the fourth and fifth errors claimed by Plaintiff are not errors, for the reasons explained by the Government.

For the sixth transcript error, plaintiff points to the fact that the 1995 IMFOLT dated April 19, 2019, includes a transaction code 553 extending the statute of limitations for collection, dated April 22, 1998, with definer code 01, extending the statute of limitations to December 30, 2016. Plaintiff contends the 1995 IMFOLT dated April 19, 2019, is inconsistent because it also contains a transaction code 550 extending the statute of limitations for collection, dated December 10, 2002, to October 3, 2007.   The Government again responds that this is not an error or inconsistency.

The Government does not dispute that two TC 550s were entered regarding Plaintiff's 1995 tax liability, the first on April 22, 1998, and the second on December 10, 2002.   According to Mr. Hillier, the fact that the IMFOLT records both TC 550s is not an error or an inconsistency in the transcript.   Mr. Hillier explained in his Declaration that a TC 550 that has been overridden by a subsequent TC 550 will be re-coded on an IMFOLT to appear as 553.   (ECF No. 27, Ex. 1 at 4, ¶¶ 7, 13.)   Plaintiff does not dispute these facts or the Government's explanation.   The Court finds that the sixth error claimed by Plaintiff is not an error, for the reasons explained by the Government.

Finally, for the seventh transcript error Plaintiff points to the fact that the 1996 TXMODA dated June 13, 2019, contains a transaction code 550 dated September 15, 2016, extending the collection statute of limitations to September 30, 2016, with a code "B," which should be a "P." The Government responds that this is an error, but that it is immaterial to this dispute.   According to Mr. Hillier's Declaration, "The TC 550 entered September 15, 2016, was entered with a command code 'B,' meaning that 'both' taxpayers consented to the adjustment of the [collection statute expiration date].   This command code is a mistake because [Plaintiff]'s 1996 liability is

not a joint tax liability, but is owed [ ] by [Plaintiff] *only*.   The correct command code that should have been entered is 'P,' meaning 'primary' taxpayer."   (ECF No. 27, Ex. 1 at 5, ¶ 16).

Plaintiff replies, without citing any evidence in the record, that the distinction between a "B" code and a "P" code is significant because the two designations identify who signed the alleged agreement to extend the statute of limitations for collection, which is at issue in this case.   Plaintiff is incorrect for two reasons.   First, the code relates to the adjustment to the collection period that was made in September 2016, not to the execution of the Form 900 in April 1998.   Second, the error does not create a genuine issue of material fact because neither party contends that anyone other than Plaintiff was liable for his 1996 tax liability.   The Court agrees with the Government that this error is immaterial for purposes of summary judgment.

The two errors Plaintiff has identified in his IDRS transcripts are not material to this dispute.   Inconsistencies on non-key facts do not create a genuine issue of material fact if the evidence is consistent with respect to the key facts.   Smith v. Kilgore, 926 F.3d 479, 484 (8th Cir. 2019).   On the record before the Court, the IDRS transcripts and the Declarations of Mr. Hillier and Ms. McCormick provide consistent support for the factual finding that on or about April 22, 1998, Plaintiff executed a Form 900 waiver extending the collection deadline for his 1996 tax liability to December 30, 2016.   Plaintiff has presented no admissible evidence contradicting this fact.   The two errors Plaintiff identified in the pages of the IDRS transcripts are minor, relate to other issues, and do not create a genuine issue of material fact as to his execution of the Form 900 waiver.   See id.; see also Smith v. City of Brooklyn Park, 757 F.3d 765, 773–74 (8th Cir. 2014) (alleged inconsistencies in defendants' statements do not create a genuine issue of material fact when multiple officer statements support the material fact that suspect was armed).   A district court need not be concerned with a contradiction if it does not relate to a genuine issue and no

reasonable jury could return a verdict in the non-moving party's favor.   Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1030-31 (8th Cir. 2000).   Even with the two errors, taking the evidence as a whole, the Court finds "a fair-minded trier of fact could not find for [Plaintiff]."   Ball, 870 F.3d at 727; see also Matsushita Elec. Indus. Co., 475 U.S. at 587 (if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"); Torgerson, 643 F.3d at 1042 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.")

Plaintiff's argument that the United States is required to produce the original or copies of the written agreements to establish that he signed the Form 900 and the 1998 Installment Agreement is not supported by case law.   While submission of the Form 900 executed by Plaintiff on April 22, 1998, would be the best evidence, the Government's production of the document is not essential.   The Government can establish the existence of the waiver through other admissible evidence, such as the IDRS transcripts and testimony from IRS officers, as it has done here.   See Stein v. United States, 377 F. App'x 69, 70 (2d Cir. 2010) (affirming summary judgment for the government where the plaintiff did not recall signing the waiver form, and the IRS established the existence of the executed waiver based on computer entries and testimony from IRS officials. The plaintiff's opposition to the government's motion was insufficient to withstand summary judgment, because "he did not recall whether he executed the form, and . . . presented only speculative arguments that the form noted in the IRS computer system might not have been [recorded correctly]."); Malkin v. United States, 243 F.3d 120, 124 (2d Cir. 2001) ("[IRS transcript] entries, taken with IRS employees' testimony as to their general practice, were sufficient to demonstrate that the taxpayer had executed [a waiver of the statute of limitations]."); United States v. McGaughey, 977 F.2d 1067, 1072 (7th Cir. 1992) (affirming summary judgment

where the IRS had destroyed the document at issue pursuant to its retention policies, but provided undisputed secondary evidence of the existence of the executed waiver); Haley v. I.R.S., 2006 WL 49732, at*2 (D. Md. Jan 20, 2006) (granting summary judgment in government's favor where the government lost the document at issue, but established the document's existence based on circumstantial evidence such as entries in computer records); but see McConnell v. United States, No. 14-CV-5355 (VEC), 2017 WL 167917, at *2 (S.D.N.Y. Jan. 17, 2017) (finding genuine dispute of material fact remained where the government presented circumstantial evidence that document existed, but the plaintiff testified he had not executed the agreement).

Here, the Government has presented evidence consisting of IRS computer and business records and the Declarations of IRS officials that on or about April 22, 1998, Plaintiff executed a Form 900 waiver extending the collection deadline for his 1996 tax liability to December 30, 2016. Plaintiff has presented no admissible evidence contradicting this fact, as he testified only that he did not remember signing the Form 900 waiver or the 1998 Installment Agreement. Taking the evidence in this case as a whole, the Court finds "a fair-minded trier of fact" could not find for Plaintiff, and the Government is entitled to summary judgment as a matter of law. Ball, 870 F.3d at 727; see also Matsushita Elec. Indus. Co., 475 U.S. at 587 (if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'").

## *V.   Conclusion*

For the reasons stated above, the Court finds the material facts in this case are undisputed. Plaintiff signed a waiver extending the collection deadline for his 1996 tax liability to December 30, 2016. Plaintiff has failed to raise a genuine issue of material dispute, and the Government is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United States of America's Motion for Summary Judgment is **GRANTED.**   (ECF No. 14)

**IT IS FURTHER ORDERED** that Plaintiff John R. Sedlmayr's Motion for Summary Judgment is **DENIED.**   (ECF No. 19)

An appropriate Judgment will accompany this Memorandum and Order.


**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this ⁄2ᵗʰ day of November, 2020.